**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**ROBERT SULLIVANT JR.**                                               **PLAINTIFF**

**V.**                                               **CIVIL ACTION NO.:3:25-CV-289-SA-JMV**

**SWAYZE ALFORD, JUDGE ROBERT WHITWELL,
DR. FRANK PERKINS, MIKE ROBERTS,
HALE FREELAND, JUDGE LAWRENCE LITTLE,
HOLCOMB DUNBAR, PLLC, AND
JOHN AND JANE DOES 1-10**                                 **DEFENDANTS**

<u>**DEFENDANT SWAYZE ALFORD'S MEMORANDUM BRIEF
IN SUPPORT OF HIS MOTION TO DISMISS**</u>

The Court should dismiss Robert Sullivant, Jr.'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks jurisdiction under the *Rooker-Feldman* Doctrine. Alternatively, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) Plaintiff has failed to state claims for which relief can be granted.

<u>**INTRODUCTION**</u>

This lawsuit stems from consolidated proceedings in the Chancery Court of Lafayette County. While a conservatorship is still pending over Plaintiff's father (Robert Sullivant, Sr. or "Sullivant Sr.") in the Lafayette County Chancery Court, there have been several orders entered against the Plaintiff, Robert Sullivant Jr., to which either no appeal was filed, or an interlocutory appeal was filed and was not granted by the Mississippi Supreme Court. Defendant, Swayze Alford, originally represented Sullivant, Sr. in an action Sullivant, Sr. filed against his son, the Plaintiff in the instant case. Plaintiff is obviously unhappy with the outcome of the legal proceedings involving his father and his father's estate and has now filed a frivolous RICO action against Alford, two chancellors who presided over the matters, an independent expert witness and his attorney, a law firm that that previously represented Plaintiff in the underlying

chancery court matters, and the Lafayette County Chancery Clerk and current conservator of Plaintiff's father's estate.

We note that since the inception of the chancery court proceedings, Sullivant, Jr. has terminated two reputable lawyers; had a third lawyer withdraw from representation (and now apparently is proceeding *pro se*); counter-sued his father; filed two Bar Complaints against Alford (which were dismissed); instituted legal proceedings against his father's friend/care-taker, Evelyn Stevens; accused a witness (Dr. Perkins) of lying/unethical conduct and has possibly reported him to the Mississippi Board of Medical Licensure, and moved the Court to recuse both Judge Whitwell and Judge Little.  Sullivant Jr. also sued Dr. Perkins's lawyer, Hale Freeland, in circuit court based on the underlying litigation.  While our adversary system of justice is based on zealous advocacy, Sullivant, Jr.'s *pro se* tactics take it to an ugly and unacceptable level.

In the instant case, Plaintiff alleges that these Defendants engaged in "a calculated scheme to misappropriate estate assets, suppress evidence, and silence the Plaintiff through abuse of judicial power and coordinated fraud."  Setting aside the absurdity of the allegations against the Defendants, and Alford specifically, the Plaintiff's Complaint must be dismissed for the reasons explained below.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2021, Mr. Alford, on behalf of Mr. Sullivant, Sr. filed a complaint against Mr. Sullivant, Jr. in the Chancery Court of Lafayette County, Mississippi (Cause No. 2021-612).[2]  Honorable Robert Q. Whitwell initially presided over the matter.  The Chancery Court Complaint asserts claims of breach of fiduciary duty, breach of the duty of care, negligent and

---

1 To be clear, Alford denies the spurious allegations against him.

2 *See* Complaint attached hereto as **Exhibit 1**. For the Court's ease of reference, *see* **Exhibit 2**, dockets for matters filed in the Chancery Court of Lafayette County (21-cv-00612 and 24-cv-00348) and in the Circuit Court of Lafayette County (23-cv-00180)

–2–

intentional infliction of emotional distress, breach of duty of good faith and fair dealing, breach of duty of loyalty, negligence, gross negligence, conversion, and unjust enrichment against Mr. Sullivant, Jr.  The Complaint bases these claims on the following factual allegations:

- "On July 12, 2017, Sullivant Sr. executed a General Durable Power of Attorney appointing his son, Sullivant, Jr., as his lawful agent and attorney in fact."[3]

- "It recently came to Sullivant, Sr.'s attention that Sullivant, Jr. was taking very large sums of money from Sullivant Sr.'s checking account.  On or about May 19, 2021, Sullivant, Sr. opened a money market account with Regions Bank that was in his name only.  That same day, Sullivant, Sr. transferred the sum of $230,000.00 from a Regions account in which Sullivant, Jr. had signature authority to his new money market account."[4]

- "Upon information and belief, Sullivant, Jr. went to the Regions Bank in Batesville and attempted to withdraw funds from Sullivant, Sr.'s new money market account, but was turned down.  Sullivant, Jr. then went to the Regions Bank in Oxford, where he successfully withdrew and transferred the sum of $230,000.00 from Sullivant, Sr.'s new money market account to an account only in his name."[5]

- "Upon information and belief, Sullivant, Jr. also withdrew and/or traded monies and/or stocks from Sullivant, Sr.'s Schwab account without Sullivant, Sr.'s knowledge or permission.  Sullivant, Jr. has taken Sullivant, Sr.'s money for his own personal use and benefit."[6]

On or about December 9, 2021, Sullivant, Jr. filed an Answer and Counterclaim.[7]  In the Counterclaim, Sullivant, Jr. sought a conservatorship over Sullivant, Sr. He also demanded an accounting in reference to certain real and personal property to which Sullivant Sr. and Sullivant Jr. were beneficiaries.[8]  The Counterclaim also sought compensation from his father, Sullivant, Sr. for Sullivant, Jr.'s care-taking services he allegedly provided for his father.[9]

---

3 *See* **Exhibit 1** at ¶ 5.
4 *See* **Exhibit 1** at ¶ 6.
5 *See* **Exhibit 1** at ¶ 7.
6 *See* **Exhibit 1** at ¶ 8.
7 *See* Answer and Counterclaim attached hereto as **Exhibit 3**.
8 *Id*.
9 *Id*.

PD.56088141.1

On February 8, 2022, the Court entered an Agreed Order for Independent Medical Exams.[10] The Order outlined that the parties agreed that Sullivant Sr. was to undergo two independent medical examinations (IMEs).[11]

Mr. Sullivant, Sr. underwent an IME by Dr. Brian Thomas and Dr. Milton Hobbs. Dr. Hobbs performed his IME on February 7, 2022, and concluded that Sullivant, Sr. could manage his own affairs. On June 20, 2022, Sullivant Jr. filed a Motion to Strike or Exclude Opinion of Dr. Milton Hobbs. The hearing on this Motion was set for August 30, 2022, but did not go forward. Given the fact that Dr. Hobbs retired following his examination of Sullivant, Sr., the parties entered an Agreed Order to strike Dr. Hobbs as an expert. This Agreed Order Granting Motion to Exclude Testimony was entered on October 31, 2022. The October 31, 2022 Agreed Order stated that Sullivant Sr. would undergo another independent medical examination.[12]

On November 3, 2022 (three days after entry of the October 31, 2022 Agreed Order), Sullivant, Jr., now proceeding *pro se*, filed a Motion for Order to Compel the Second Exam of the Agreed Order for Independent Medical Exams.[13] This Motion was never set for hearing.

On December 5, 2022, Sullivant, Sr. filed a Motion to Appoint Conservator, requesting that Sherry Wall, an independent third party, be appointed as conservator.[14]

On December 8, 2022, Sullivant Jr. filed a Motion for Summary Judgment as to all counts in Sullivant, Sr.'s Complaint. This Motion for Summary Judgment was set for hearing on January 25, 2023, and was denied by the Court after the hearing.[15] On March 31, 2023, the

---

10 *See* February 8, 2022 Agreed Order for Independent Medical Exams attached hereto as **Exhibit 4**.
11 *Id.*
12 *See* Agreed Order Granting Motion to Exclude Testimony attached hereto as **Exhibit 5**.
13 *See* docket attached hereto as **Exhibit 2A**.
14 *See* docket attached hereto as **Exhibit 2A**.
15 *See* Order attached hereto as **Exhibit 6**.

PD.56088141.1

Mississippi Supreme Court denied Sullivant's Jr.'s petition for interlocutory appeal of the chancery court's denial of Sullivant, Jr.'s Motion for Summary Judgment.[16]

On January 17, 2023, Dr. Frank Perkins, M.D. completed an IME of Sullivant, Sr., and issued his IME report on January 27, 2023. Given the results of Dr. Perkins' IME of Sullivant, Sr., Sullivant Sr. agreed to be placed under conservatorship, but maintained that an independent third party be appointed as conservator.

On April 14, 2023, Sullivant, Sr. moved the Court for a trial setting for his damages claims.[17] Sullivant, Sr. also moved the Court for permission to execute a will on April 21, 2023.[18]

On April 19, 2023, Plaintiff filed an Emergency Petition for Conservator which asked the Court to appoint Sullivant Jr. as conservator over Sullivant Sr. and his estate.[19] On April 20, 2023, Plaintiff filed a Motion to Disqualify Mr. Alford as counsel for Sullivant, Sr.[20]

On April 25, 2023, the Court heard the Motions to Appoint Conservator, the Motion to Disqualify, the Request for Permission for Sullivant Sr. to Execute a Will, and the Motion for Trial Setting. The Court agreed that an independent third party should be appointed as conservator and appointed Sherry Wall, the Lafayette County Chancery Clerk as conservator over Sullivant, Sr.'s estate.[21] The Court dismissed the Motion to Disqualify without prejudice finding it to be premature given the matter pending before the Bar.[22] The Court granted

---

16 *See* Mississippi Supreme Court's Order attached hereto as **Exhibit 7**.
17 *See* docket attached hereto as **Exhibit 2A**.
18 *id.*
19 *id.*
20 *id.*
21 *See* Order attached hereto as **Exhibit 8**.
22 *See* Order attached hereto as **Exhibit 9**.

–5–

Sullivant, Sr.'s Request to Execute a Will after hearing Dr. Perkins testify that Sullivant, Sr. had the testamentary capacity to execute a will.[23]

Thereafter, Sullivant Jr. subpoenaed Dr. Perkins to appear for a deposition and to produce documents relating to his examination, notes, and procedures utilized in examining Mr. Sullivant, Sr. Dr. Perkins, through his attorney, Hale Freeland, filed a Motion to Quash on June 9, 2023, which set forth that there was no reason for a deposition since the Court had already ruled that Sullivant, Sr. had the testamentary capacity to execute a will—noting that Sullivant Jr. was present at the hearing and had the opportunity to question Dr. Perkins at that time.[24] In his Motion to Quash, Dr. Perkins set forth that he would be willing to testify as long as the deposition did not interfere with patient care and as long as he was paid for his expert testimony pursuant to Rule 26 of the Mississippi Rules of Civil Procedure. Hale Freeland filed his Entry of Appearance on behalf of Dr. Perkins on July 13, 2023.[25]

On June 21, 2023, Sullivant Jr. filed a Motion for Recusal against the Honorable Robert Q. Whitwell, the chancellor presiding over the matter.[26] The allegations contained in the Motion for Recusal were speculative and unsubstantiated. They include, among other unsavory allegations, that Judge Whitwell improperly testified as a character witness, demonstrated "overt bias" in favor of Mr. Alford, engaged in improper *ex-parte* communications, and did not allow "proper cross-examination of Dr. Frank Perkins."[27] The Motion for Recusal was heard by the Court on July 7, 2023.[28] On July 17, 2023, Judge Whitwell issued a ninety-eight (98) page Order denying Sullivant, Jr.'s Motion for Recusal.[29] Sullivant Jr. filed a Petition for

---

23 *See* Order attached hereto as **Exhibit 10**.
24 *See* docket attached hereto as **Exhibit 2A**.
25 *Id.*
26 *Id.*
27 *Id*.
28 *Id*.
29 *See* July 17, 2023 Order on Motion for Recusal attached as **Exhibit 11**.

PD.56088141.1

Interlocutory Appeal to the Mississippi Supreme Court in conjunction with the Court's July 17, 2023 Order. The Supreme Court denied Sullivant Jr.'s Petition.[30]

On June 30, 2023, Sullivant, Jr. filed a Motion to Strike All Testimony and Reports of Dr. Frank Perkins, or, in the alternative, to Compel his Deposition by Court Order.[31] Sullivant Jr. filed his Motion even though the Court already appointed Sherry Wall as guardian and conservator of Sullivant, Sr. and issued its Order Granting Robert Sullivant's Sr.'s Request to Execute a Will. Sullivant, Jr.'s Motion, without any substantiation whatsoever, accused Dr. Perkins of lying and other unethical conduct and served notice that Sullivant Jr. will report Dr. Perkins to the Mississippi Board of Medical Licensure. Dr. Perkins was forced to retain his own lawyer, Mr. Freeland, in the underlying litigation. Dr. Perkins's Response states: "The tactics of Robert Sullivant Jr. are to threaten, demean, and bully any party in order to control or eliminate their participation and outcome, including this Court, the attorneys involved, and the witnesses with regard to the rule of law, misstating authority."[32] On August 31, 2024, the trial court granted Dr. Perkins' Motion to Quash the subpoena for deposition.[33]

On October 24, 2024, Judge Whitwell entered an Order of Transfer transferring the case to Judge Lawrence L. Little, stating "[e]ven though this Court strongly disagrees with and takes exception to Defendant Robert Sullivant, Jr.'s unfounded and erroneously held suppositions that he cannot receive a fair trial before the undersigned judge, the Court, *sua sponte*, does hereby ORDER this cause to be transferred from the Honorable Judge Robert Q. Whitwell to the Honorable Judge Lawrence L. Little for hearing on all undecided issues prospectively filed

---

30 *See* Order attached hereto as **Exhibit 12**.
31 *See* docket attached hereto as **Exhibit 2A**.
32 *See* Response to Motion to Strike attached hereto as **Exhibit 13**.
33 *See* August 31, 2023 Order attached hereto as **Exhibit 14**.

–7–

herein, without further review or reconsideration on any matters previously ruled upon."[34]

On November 20, 2023. Judge Little sanctioned Sullivant Jr. for propounding discovery to a non-party witness and awarded attorney's fees to Dr. Perkins.[35] On the same day, Judge Little also entered an Order striking several sections of Sullivant Jr.'s June 30, 2023 Motion to Strike All Testimony and Reports of Dr. Frank Perkins holding: "Mr. Sullivant, Jr. shall not file any pleading or in open court make any statement containing derogatory assertions that disparage the character or integrity of any party, witness, attorney, or court personnel. The failure to abide by this order may result in the imposition of sanctions, including the contempt powers of this Court."[36] On November 27, 2023, the Court denied Sullivant Jr.'s Motion to Strike the Testimony of Dr. Perkins in its entirety.[37]

On December 21, 2023, the Court substituted Mike Roberts as conservator over Mr. Sullivant, Sr. as Sherry Wall retired as the Lafayette County Chancery Clerk.[38]

On September 19, 2024, Sullivant Jr. filed a 19-page Motion to Recuse asking Judge Little to recuse himself from the matter.[39] On October 2, 2024, Judge Little denied Sullivant, Jr.'s second Motion to Recuse stating "the Court believes that Movant has labeled adverse rulings, normal courtroom procedures and standard legal practices as bias when instead it is actually Movant's lack of understanding of how to practice law."[40]

On July 30, 2024, Conservator Mike Roberts filed a Complaint for Partition and other Equitable Relief in the Chancery Court of Lafayette County seeking to partition real estate

---

34 *See* October 24, 2023 Order attached hereto as **Exhibit 15**.
35 *See* November 20, 2023 Order attached hereto as **Exhibit 16**.
36 *See* November 20, 2023 Order attached hereto as **Exhibit 17**.
37 *See* November 27, 2023 Order attached hereto as **Exhibit 18**.
38 *See* Order attached hereto as **Exhibit 19**.
39 *See* docket attached hereto as **Exhibit 2A**.
40 *See* October 2, 2024 Order attached hereto as **Exhibit 20**.

PD.56088141.1

jointly owned by Sullivant Jr. and Sullivant Sr. by sale.[41]  The Complaint also requested that since Sullivant Sr. is in an assisted living facility and Sullivant Jr. resides at the subject property and is in sole possession of the subject property that a temporary restraining order be entered ordering Sullivant Jr. to pay the full amount of the mortgage, insurance, and taxes until the property is sold.[42] An Order Granting Partition was entered on July 16, 2025.[43]  On October 2, 2024, the Court entered an Order requiring Sullivant Jr. to pay the regular mortgage payments on the subject property.[44]  On September 9, 2025 the Court issued an Order finding Sullivant Jr. in willful contempt of court for failure to make the mortgage payments for eight months.[45]

<u>ARGUMENT AND AUTHORITIES</u>

**1.      The Standard for Rule 12(b)(1) Dismissal.**

"Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001), citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998).  In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts."  *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990).  The court may consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 412-413 (5th Cir.1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. U.S.*, 281 F.3d at 161.

---

41 *See* Complaint filed attached hereto as **Exhibit 21**.
42 *Id.*
43 *See* July 16, 2025 Order attached hereto as **Exhibit 22**.
44 *See* October 2, 2024 Order attached hereto as **Exhibit 23**.
45 *See* September 9, 2025 Order attached hereto as **Exhibit 24**.

–9–

**2. This Court Lacks Subject Matter Jurisdiction Based on the *Rooker-Feldman* Doctrine.**

Plaintiff's Complaint underhandedly requests this Court to review state court orders and to essentially "undo" them. But federal courts lack jurisdiction to review, modify or nullify final orders of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). This is so because only the United States Supreme Court can entertain a proceeding to reverse, modify or otherwise engage in an appellate review of a state court decision. *See Johnson v. DeGrandy*, 512 U.S. 997, 1005-1006 (1994); *Matter of Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998). "The *Rooker-Feldman* doctrine deprives federal courts of subject matter jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district review and rejection of those judgments." *Turner v. Cade*, No. 09-30469, 354 Fed. App'x 108, 11 (5th Cir. 2009). "A plaintiff cannot 'circumvent this jurisdictional limitation be asserting claims not raised in the state court proceedings or claims framed as original claims for relief, if these claims are 'inextricably intertwined' with a state judgment." Id. (*citing United States v. Shepard*, 23 F. 3d 923, 924 (5th Cir. 1994)(*citing Liedtke v. State Bar of Texas*, 18 F. 3d 315, 317 (5th Cir. 1994)). "A claim is inextricably intertwined with a state court judgment if, in order to find in the plaintiff's favor, the federal court would have to conclude that the state court wrongly decided the issues before it would it or would otherwise have to void the judgment." *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir. 1989). "[L]itigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits."" *Id*. (*citing Hale v. Harney*, 786 F.2d 688, 609-91 (5th Cir. 1986).

PD.56088141.1

Here, although Plaintiff purports to bring this action under the RICO statute, the claims are actually collateral attacks on the validity of multiple orders entered by the Lafayette County Chancery Court in the Plaintiff's father's conservatorship proceeding. Not only have Plaintiffs sought to circumvent or overturn several Mississippi state court orders, but the RICO claims and state chancery court matters also are "inextricably intertwined" and therefore subject to dismissal under the *Rooker-Feldman* Doctrine.

Plaintiff is not the first plaintiff to try to re-litigate his claims in federal court. This Southern District has previously dismissed a suit similar to this one for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. In *Chasez v. Powell*, 1:07CV929-LGJ-JMR, 2008 WL 591941 (S.D. Miss. Feb. 28, 2008), a plaintiff who was "[u]nhappy with the outcome" of his "divorce proceedings and a related breach of contract case" "filed suit in this Court naming as defendants the people and entities involved in the various stages of his litigation, including the Chancery Court, the Mississippi Supreme Court, and all attorneys representing or opposing him, among others." Chasez's allegations also included racketeering, constitutional violations, extortion, bank fraud, theft by misrepresentation, perjury, and "fixing" the trial. *Id*. The Court observed that the *Rooker-Feldman* Doctrine not only "prevents a federal district court from reviewing, modifying, or nullifying a state court judgment or order […], but it also extends to others in which the constitutional claims presented in federal court are inextricably linked with the state court's grant or denial of relief." *Id.* (citing *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986)) (internal quotation marks and brackets omitted).

This dispute falls squarely within the category of cases that the Fifth Circuit and this Court has found appropriate for dismissal for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Plaintiff is essentially seeking to relitigate the underlying Chancery

–11–

Court proceedings in federal court. He asks for damages "including but not limited to the unlawful transfer and depletion of estate assets, fraudulent attorney's fees, sanctions, and costs imposed." Plaintiff also requests "restitution for all misappropriated assets, attorney's fees, conservatorship fees, sanctions, and any other funds wrongfully obtained by Defendants, and that the Court "order the return of unlawfully seized bank records, restoration of estate assets wrongfully transferred or depleted, and the return of all fees, sanctions, and costs wrongfully imposed or collected." Plaintiff also asks for injunctive relief "enjoining Defendants from engaging in further conservatorship-related racketeering, asset transfers, fraudulent fee collection, suppression of evidence, or obstruction of justice." In order to succeed on the numerous claims he has pleaded, Plaintiff would have to prove that the Chancery Court's decisions were wrong or should have otherwise be voided. Because the issues raised by Plaintiff's claims are "inextricably intertwined" with the Chancery Court proceedings, this Court does not have subject matter jurisdiction and Plaintiff is barred by the *Rooker-Feldman* doctrine from seeking to achieve in federal court what in substance should be remedied through appellate review of the Chancery Court proceedings. *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

Alternatively, the Court should dismiss Plaintiffs' Complaint because it fails to state a claim for which relief can be granted.

### 3. The Standard for Rule 12(b)(6) Dismissal.

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the Plaintiff has failed to plead enough facts to state a claim to relief that is *plausible* on its face. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Id.*

PD.56088141.1

at 1965 (citations omitted). To avoid dismissal, legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal,* 566 U.S. 662, 677-678 (2009).

**4.       Plaintiff Fails to State a RICO Claim against Alford.**

Alford is entitled to a dismissal of the claims against him pursuant to Rule 12(b)(6) because Plaintiff has failed to properly allege a RICO cause of action. Despite a lengthy, albeit inarticulate Complaint, Plaintiff cannot support a claim under any subsection of § 1962 of the RICO Act.[46]

A successful RICO claim alleges "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). Here, Plaintiff's Complaint does not include sufficient facts to establish any of the required elements of a RICO claim against Alford.

**A.  Plaintiff fails to allege a pattern of racketeering activity against Alford.**

"'A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *K&F Rest. Holdings, Ltd. v. Rouse*, Civil Action No. 16-293, 2018 WL 3553422, at * 17 (M.D. La. July 24, 2018), aff'd on other grounds, 798 F. App'x 808 (5th Cir. 2020) (*quoting Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016)). "The predicate criminal acts can be violations of either state or federal law." *Id.* (*citing St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)). As relevant here, "a RICO plaintiff alleging predicate acts of fraud (as Plaintiff

---

[46] Plaintiff fails to attach a RICO statement along with his Complaint pursuant to Local Rule 83.8. Arguably, Plaintiff had not met the basic pleading requirement of the Federal Rules of Civil Procedure and this Court's Local Rules and is yet another reason why Plaintiff's Complaint should be dismissed.

–13–

does here) must plead the circumstances of that fraud with particularity," consistent with Rule 9(b). *See Nix* at 931 (5th Cir. 2023).

In the instant case, Plaintiff identifies the predicate acts as wire fraud (18 U.S.C. §1342); mail fraud (18 U.S.C. §1341), witness tampering (18 U.S.C. §1512), and obstruction of justice (18 U.S.C § 1503).

### i. Wire Fraud

Plaintiff makes two conclusory allegations with regard to Alford's alleged involvement in wire fraud: 1) "On December 12, 2022, Defendant ALFORD sent emails to Plaintiff and others admitting the unauthorized movement of estate funds into a separate account, without any court order, and subsequently attempted to retroactively freeze the account to conceal the theft," and 2) "On or about May 5 and May 8, 2023, Alford used electronic communications to misrepresent the status of estate assets, coordinate with court staff, and conceal unauthorized transactions, all in furtherance of the Enterprise's criminal objectives." Plaintiff, however, attached the emails in question to his Complaint as Exhibit C. The email dated December 13, 2022 from Alford to Sullivant Jr. reads as follows:

> Robert,
>
> When I got the records on Friday from you I intended to propose that the account be frozen. I know what it looks like but I did discuss it with Brad before I deposited it into the bank account. I really thought that I should try to earn some interest on the money for your dad. I should have entered an agreed order and that was my mistake. I would have tended to it today and I guess I may have to but I have been mostly laid up.
>
> I really would like to talk to you if you would agree. I have really only tried to help your dad. It was important to me to try to get you together. Please let me know if you will talk. Thanks. Swayze
>
> The email dated May 5, 2023 from Alford to Samantha Weathersbee reads:
>
> Samantha,

–14–

> A er [sic.] receiving Mr. Sullivant Jr.'s rebu al [sic.], I went back and reviewed the FNB Oxford records that were provided to me and I see the [sic.] Mrs. Stevens was added to both accounts. There were four signature cards and I overlooked one of them. His response also indicated that I had not reconciled the account. I will request the statements from the bank.

18 U.S.C.A. § 1343 provides that whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce commits wire fraud. Here, neither email is evidence of a scheme to defraud or to obtain money in interstate commerce. One email is essentially just Alford apologizing to Plaintiff. The other email is an email from Alford to the Court stating that "Mrs. Stevens was added to both accounts," that he had overlooked one of the signature cards, and that he would request the bank statements." These emails are simply not evidence of a scheme to defraud or obtain money in interstate commerce, and the allegations are not sufficiently pled with specificity given the blanket fraud allegation. As such, Plaintiff has failed to state a claim for wire fraud against Alford.

### ii. Mail Fraud

With regard to alleged mail fraud, Plaintiff makes one allegation directed toward Alford: "On or about April 21, 2023, Alford mailed (or caused to be mailed) a motion to the court seeking permission for the Ward to execute a will relying on manipulated and fraudulent medical assessments and the testimony of a tampered witness, misrepresenting the Ward's capacity. (Exhibit G.) This act was designed to facilitate the illegal transfer of assets and constitutes mail

–15–

fraud."[47] The Complaint attaches a copy of the Request for Permission for Robert Sullivant, Sr. To Execute a Will which Alford filed on Sullivant Sr.'s behalf on April 21, 2023.[48]

18 U.S.C.A. § 1341 defines mail fraud as any person:

intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed… .

Here, Alford was simply filing a motion on behalf of his client that requested specific relief **for his client**—not for himself. Plaintiff's Complaint fails to sufficiently allege how this motion equates to mail fraud—particularly with the heightened pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure. As such, Plaintiff has failed to state a claim for mail fraud against Alford.

### iii. Witness Tampering

With regard to alleged witness tampering, Plaintiff makes one allegation directed toward Alford: "ALFORD coached PERKINS to provide false and misleading testimony regarding the Ward's capacity, including testimony on or about May 9, 2023, that directly contradicted PERKINS' own IME report. (Exhibit J.) This was not zealous representation—it was witness tampering, executed with the intent to defraud the Court." In support of his allegation, Plaintiff attached Exhibit J to the Complaint. Exhibit J is an excerpt from a transcript from a May 9, 2023

---

[47] *See* Plaintiff's Complaint at pg. 16.
[48] The exhibit does not establish the pleading was mailed.

–16–

hearing before Judge Whitwell. As the Court can well see, the excerpt attached merely shows Alford conducting an examination of Dr. Perkins—as lawyers are called to do in Court. The transcript also shows there was no objection to Alford's line of questioning.

> 18 U.S.C.A. § 1512(b) defines witness tampering (in pertinent part) as one who:

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
> (1) influence, delay, or prevent the testimony of any person in an official proceeding;

> (2) cause or induce any person to—

> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

> (D) be absent from an official proceeding to which such person has been summoned by legal process;

Given the excerpts from the hearing that Plaintiff attached to his Complaint in support of his witness tampering allegation against Alford, it is clear that what transpired was certainly not witness tampering, but rather an attorney doing his job. As such, Plaintiff has failed to state a claim for witness tampering against Alford.

### iv. Obstruction of Justice

The Complaint Contains no specific allegations of obstruction of justice against Alford— this alleged predicate criminal act appears to apply to the other Defendants and not Alford. The Complaint only makes the blanket assertion: "Judicial officers and attorneys conspired to suppress evidence, deny due process, and intimidate Plaintiff… ." However, this is clearly not

–17–

enough facts to state a claim to relief under *Iqbal/Twombly*. As such, Plaintiff has failed to allege a claim of obstruction of justice against Alford.

### v. Conspiracy to Commit Racketeering

Because Plaintiff has not pled, and cannot show that Alford violated §§ 1962(a), (b) and (c), the Plaintiff's claims against Alford under § 1962(d) are also deficient. Additionally, Plaintiff has failed to satisfy the requirement for alleging with particularity a civil RICO conspiracy against Alford and the other Defendants.

Given the foregoing, Plaintiff has failed to allege that Alford engaged in a pattern racketeering activity as Plaintiff has failed to sufficiently allege *any* predicate criminal acts by Alford—much less any acts that pose a threat of continued criminal activity. As such Plaintiff has failed to state a RICO claim against Alford and the RICO claim should be dismissed.

### B.      Plaintiff fails to allege the existence of an enterprise.

An enterprise under RICO can include the usual legal entities such as partnerships and corporations, but it also can include "any union or group of individuals associated in fact although not a legal entity...." 18 U.S.C. § 1961(4) (emphasis added). To establish an association-in-fact enterprise, a plaintiff must "show 'evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.' " *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440 (5th Cir.1987) (*quoting United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)). An enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Id*. at 441 (*quoting Turkette*, 101 S.Ct. at 2529). It must have an ongoing organization, and its members must function as a continuing unit, as shown by a decision making structure. *Shaffer v. Williams*, 794 F.2d 1030, 1032 (5th Cir.1986).

–18–

A plaintiff asserting a civil RICO claim must allege the existence of such an enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987). It is important to note at the outset that, whatever the pleading requirement for other causes of action, plaintiffs in RICO claims "must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Id.*

When pleading the existence of an enterprise, Plaintiff seems to use all the right "buzz words" but does not truly plead specific facts which establish the enterprise. Plaintiff describes "criminal enterprise" as "a coordinated syndicate comprised of judicial officers, attorneys, medical professionals, and court staff operating with the singular purpose of exploiting conservatorship proceedings to misappropriate assets, suppress rights, and perpetuate financial elder abuse." And that is it—there are no **specific factual allegations** (particularly with regard to Alford) to show that the Defendants were a continuing unit separate and apart from the activity in which it engages. Rather, Plaintiff groups Alford in with all the attorney defendants and makes the conclusory allegation that they "initiate and/or perpetuate fraudulent conservatorship actions, manufacture allegations, manipulate evidence, and coordinate asset seizures" and "engage in *ex parte* communications with judicial officers, submit fraudulent billing records, and conspire to suppress legitimate objections and evidence."[49] This is not sufficient to state a RICO claim as a matter of federal law. *See Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988) (approving dismissal of RICO conspiracy claim because plaintiff failed to sufficiently plead the existence of a RICO enterprise.)

Further, Plaintiff's Complaint fails to allege how Alford uses or invests income derived from "racketeering activity" to acquire an interest in or to operate the alleged enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise.

---

[49] *See* Plaintiff's Complaint, pg. 11.

Accordingly, Plaintiff has failed to state a RICO claim upon which relief can be granted, and as such, the RICO claims against Alford must be dismissed.

**5. Plaintiff also fails to state a state law claim against Alford upon which relief can be granted.**

Plaintiff's Complaint "asserts claims for criminal financial exploitation and elder abuse under Mississippi law, including Miss. Code Ann. § 43-47-5 against Defendants Alford, Roberts, and others who participated in the misappropriation of assets and abuse of the Ward." These blanket allegations contain no specific factual allegations that outline how Alford allegedly misappropriated assets or abused the Ward. As such, these claims fail to pass *Twombly/Iqbal* muster. Moreover, because Plaintiff has failed to state a RICO claim this Court should decline to exercise pendant jurisdiction for this alleged state law claim against Alford. Plaintiff's state law claim must also be dismissed.

**CONCLUSION**

This Court does not have jurisdiction to entertain Plaintiff's attempts to re-litigate orders previously entered by the Lafayette County Chancery Court, and Plaintiff's Complaint should be dismissed with prejudice. To the extent additional claims are made, they are so inextricably intertwined with the adjudicated chancery court matters, that they must also be dismissed with prejudice. Alternatively, the Court should dismiss Plaintiffs' Complaint because it fails to state any RICO or state law claims for which relief can be granted.

RESPECTFULLY SUBMITTED, this the 30th day of October, 2025.

BY: */s/Lauren R. McCrory*

Mark N. Halbert (MSB#: 100048)
PHELPS DUNBAR LLP
105 East Main Street, Suite 201
Tupelo, Mississippi 38804
Post Office Box 1220

–20–

Tupelo, Mississippi 38802-1220
Telephone: (662) 842-7907
Facsímile: (662) 842-3873
E-Mail:  mark.halbert@phelps.com

Lauren R. McCrory (MSB#: 102976)
PHELPS DUNBAR LLP
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: lauren.mccrory@phelps.com

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that I have this date filed the above and foregoing document using the ECF filing system which sent notification of same to all counsel of record.

THIS the 30th day of October, 2025.

*/s/Lauren R. McCrory*
Lauren R. McCrory

–21–

PD.56088141.1