IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ROBERT SULLIVANT, JR.**                                                 **PLAINTIFF**

v.                                                                      **No. 3:25-cv-00289-MPM-JMV**

**SWAYZE ALFORD**, *et al.*                                           **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This matter comes before the Court on Defendants', Swayze Alford, Judge Robert Whitwell, Holcomb Dunbar, PLLC, Dr. Frank Perkins and Hale Freeland, Motions to Dismiss [15], [26], [30], [60], [62], and *Pro se* Plaintiff Robert Sullivant, Jr.'s ("Mr. Sullivant") Motions to Dismiss [37], [38]. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

**FACTUAL BACKGROUND**

On May 19, 2021, Mr. Sullivant transferred $230,000 from a joint account he held with his father, Robert Sullivant, Sr. ("Sullivant Sr."), to a separate account only in Mr. Sullivant, Jr.'s name. At the time, Mr. Sullivant had a Power of Attorney over his father. On October 25, 2021, Sullivant Sr., represented by Mr. Alford, sued his son in the Lafayette County Chancery Court for breach of fiduciary duty, breach of the duty of care, negligence, conversion, and unjust enrichment among many other claims. Mr. Sullivant characterizes this lawsuit as part of the Defendants' scheme to seize his vulnerable father's assets. On December 9, 2021, Mr. Sullivant attempted to establish a conservatorship over his father. Chancellor Whitwell initially presided over the matter.

On February 8, 2022, an agreed order outlined that Sullivant Sr. would undergo two independent medical examinations. One of the doctors who performed the medical exam, Dr. Milton Hobbs, retired shortly after Sullivant, Sr.'s examination, so the Chancery Court struck him as an expert. Another independent medical exam was ordered. On January 17, 2023, Dr. Frank

1

Perkins performed Sullivant Sr.'s medical exam, and Sullivant Sr. subsequently agreed to be placed under conservatorship if an independent third party was appointed conservator. On April 20, 2023, Sullivant Sr. requested permission to execute a will, and the Chancery Court later held that Sullivant Sr. maintained testamentary capacity to execute a will. Mr. Sullivant subsequently subpoenaed Dr. Perkins to appear for a deposition relating to Sullivant Sr.'s medical examination.

On April 25, 2023, the Chancery Court appointed Sherry Wall, the Lafayette County Chancery Clerk, as conservator over Sullivant Sr.'s estate. On June 9, 2023, Dr. Perkins, through his attorney Hale Freeland, filed a motion to quash the deposition which was later granted. On June 21, 2023, Mr. Sullivant filed a motion for recusal against Chancellor Whitwell. On July 17, the motion for recusal was denied, and the Mississippi Supreme Court affirmed the denial after Mr. Sullivant filed an interlocutory appeal. [15] ex. 12.

On October 24, 2023, Chancellor Whitwell transferred the case to Chancellor Lawrence L. Little *sua sponte*. On November 20, 2023, Mr. Sullivant was sanctioned by Chancellor Little for propounding discovery against Dr. Perkins, a non-party witness. On December 21, 2023, Mike Roberts replaced Sherry Wall, after her retirement, as Sullivant Sr.'s conservator. On September 19, 2024, Mr. Sullivant filed a motion to recuse against Chancellor Little, which was later denied. On July 30, 2024, Mr. Roberts filed a complaint for partition, seeking to partition real estate jointly owned by Mr. Sullivant and his father by sale, and to place Sullivant Sr. in an assisted living facility. On October 2, 2024, Mr. Sullivant was ordered to pay regular mortgage payments on the property subject to the partition order. On July 16, 2025, the partition was granted and on September 9, 2025, Mr. Sullivant was found in willful contempt for failure to pay the mortgage as ordered for eight months. Sullivant Sr.'s conservatorship proceedings are still ongoing.

Mr. Sullivant now brings this suit *pro se* against the Defendants because he believes that they are all part of a criminal enterprise whose goal is to use the courts to seize assets from vulnerable individuals. He is suing the Defendants both named and unidentified pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) for their role in the alleged criminal enterprise that orchestrated a pattern of racketeering through wire fraud, mail fraud, conspiracy, witness tampering, and obstruction of justice under the guise of conservatorship proceedings. He is also suing pursuant 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights against Chancellor Whitwell, Chancellor Little, Mr. Roberts, and "attorneys acting in concert with them." [1]. Mr. Sullivant requests that this Court enjoin the ongoing conservatorship proceedings and reverse the Chancery Court's orders in the matter. Dr. Perkins and Mr. Freeland filed counterclaims for expenses against Mr. Sullivant. Multiple Defendants and Mr. Sullivant have filed motions to dismiss the claims against them.

## STANDARD OF REVIEW

As a preliminary matter, the Court must decide whether it has subject-matter jurisdiction over this case. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When ruling on a Rule 12(b)(1) motion, the Court "is empowered to consider matters of fact which may be in dispute," *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), and should only grant the motion if "the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. The Court will address each of the jurisdictional arguments in turn.

## ANALYSIS

The Defendants argue that Mr. Sullivant's claims should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because they are barred under the *Rooker-Feldman* doctrine and *Younger* Abstention. Mr. Sullivant disagrees. The Court will address each argument in turn.

### A. Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine establishes the principle that federal district courts lack jurisdiction over suits which are, in substance, appeals from state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is "narrow[ly]" construed and confined to cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). "A plaintiff cannot 'circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief,' if these claims are 'inextricably intertwined' with a state judgment." *Turner v. Cade*, 354 F. App'x 108, 111 (5th Cir. 2009) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir.1994)). The fact that a pending action exists, in and of itself, is not enough to trigger *Rooker-Feldman*.

Here, the Defendants argue that Mr. Sullivant's RICO and § 1983 claims are inextricably intertwined with the state court proceedings because Mr. Sullivant's injuries are caused by the state court orders concerning his father's conservatorship. The Court finds that the *Rooker-Feldman* doctrine is inapplicable because Mr. Sullivant is not a "state court loser" as required under *Exxon*. 544 U.S. at 284. The Defendants' assertions are based on the link between Mr. Sullivant's claims

4

and his father's conservatorship proceedings. As the state court conservatorship proceedings are still ongoing, the *Rooker-Feldman* doctrine is not a bar to Mr. Sullivant's claims.

### B. Younger Abstention

*Younger* abstention prevents federal courts from hearing claims of injunctive relief when doing so "would interfere" with pending state court proceedings. *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Like *Rooker-Feldman*, the Supreme Court has stressed that this abstention applies in "only exceptional circumstances." *Sprint Comm'n, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013). As outlined in *Sprint Communications*, *Younger* abstention only applies to three categories of claims: (1) "federal intrusion into ongoing state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 571 U.S. at 70.

Here, the third circumstance applies to Sullivant Sr.'s ongoing conservatorship proceedings. The third category is limited to cases where the federal plaintiff seeks to attack implicit judicial functions such as rendering judgments or issuing orders which are important interests of State courts. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989); *see also Juidice v. Vail*, 430 U.S. 327 at 336-37 n.12 (1977) (upholding that *Younger* applies to attempts to interfere with contempt orders as it aids the "judicial system, so that its orders and judgments are not rendered nugatory."); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987) (upholding abstention where the debtor sought a federal injunction to prohibit their creditor from enforcing the state-court judgment because the case involved the processes by which the State compels compliance with its orders). Mr. Sullivant clearly challenges the State's processes to compel compliance because he requests this Court to stop the State court's

proceedings and to void the orders and judgments on his father's conservatorship proceedings through RICO and § 1983 claims. This case meets the exceptional circumstances to apply *Younger*.

For the *Younger* doctrine to require federal courts to decline to exercise jurisdiction the following elements must also be met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding;' (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice*, 677 F.3d at 716 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). When all three of these requirements are met, the Court may only decline the *Younger* doctrine when "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it, or (3) application of the doctrine was waived." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citations omitted).

Here, Mr. Sullivant asserts that he raises independent federal claims under RICO and 42 U.S.C. § 1983 separate from the ongoing conservatorship proceedings. The Defendants argue that all three elements of the *Younger* doctrine apply. *See Bice*, 677 F.3d at 716.

First, "[i]n order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the effect it would have on the state proceedings." *Id.* at 717 (citation omitted). "Interference is established whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Id.* For his requested relief, Mr. Sullivant asks this Court to prevent Defendants from continuing the conservatorship proceedings in Chancery Court

and to void the previous decisions and orders made in the ongoing proceedings under the guise of stopping racketeering activity. Mr. Sullivant is directly asking this Court to interfere with the ongoing Chancery Court conservatorship proceedings.

Second, the Court will consider whether the state has an important interest in regulating the conservatorship proceedings. The "State has an important interest in regulating constitutional claims rooted in fundamental fairness of its courts' proceedings." *Arvie v. Cathedral of Faith Missionary Baptist Church*, No. 24-30759, 2025 WL 1565149, at *2 (5th Cir. June 3, 2025). Here, Mr. Sullivant's RICO and § 1983 claims assert that Defendants are engaging in a criminal racketeering scheme and violating his constitutional rights through the conservatorship proceedings. These claims directly challenge the fundamental fairness of the Chancery Court's proceedings, and under *Arvie*, the state has an interest in regulating claims of this nature. *See Id.*

Third, in analyzing whether Mr. Sullivant had an opportunity to raise his constitutional challenges in state court, the Court will evaluate "the ability of the state courts to provide an adequate remedy for the violation of federal rights." *Bice*, 677 F.3d at 718 (5th Cir. 2012). Mr. Sullivant argues that because he raises RICO and § 1983 claims under federal statutes, state courts will not be able to provide an adequate remedy through state law claims. The Court agrees with the Defendants' assertions that Mr. Sullivant has ample opportunity to raise his constitutional challenges and his misgivings for further review with the Mississippi appellate system to obtain his requested relief if merited. *See Earle*, 388 F.3d at 521 (finding adequate opportunity to raise constitutional challenges in state court where appellate review is available to the plaintiff to litigate constitutional claims in state courts.). Nothing in the record or Mr. Sullivant's complaint indicates that his requested relief is impossible to obtain in state courts through non-federal claims. The *Younger* elements have been met.

As for any exceptions to the *Younger* doctrine, Mr. Sullivant only asserts the first exception that the state court proceedings were brought in bad faith or for the purpose of harassing him. "The bad faith exception [to *Younger* abstention] is narrow and is to be granted parsimoniously." *Wightman v. Texas Supreme Ct.*, 84 F.3d 188, 190 (5th Cir. 1996). Mr. Sullivant must prove that bad faith exists for the Court to apply the burden. *See Hensler v. Dist. Four Grievance Comm. of State Bar of Texas*, 790 F.2d 390, 391 (5th Cir. 1986) (holding that state court proceedings may not be enjoined without allegations and proof of bad faith). Here, Mr. Sullivant claims the proceedings were brought in bad faith because they were perpetuated as part of the alleged criminal enterprise to deprive him of his assets. Mr. Sullivant raises no further proof of bad faith outside of his allegations. His allegations alone that a criminal enterprise exists are insufficient to invoke the narrow bad faith exception to *Younger*. *See Wightman*, 84 F.3d at 190. The Court dismisses all of Mr. Sullivant's claims for lack of subject matter jurisdiction without prejudice.

### C. Counterclaims

Turning to the counterclaims, Dr. Perkins and Mr. Freeland (collectively "Counter-Claimants") argue that they are entitled to the expenses and attorney fees they incurred in defending themselves from Mr. Sullivant's claims pursuant to 28 U.S.C. § 1927, 42 U.S.C § 1988, and Fed. R. Civ. P. 11. Mr. Sullivant filed motions to dismiss the counterclaims arguing that the sanctions are inapplicable. § 1927 states "[a]ny attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The Fifth Circuit has not addressed whether § 1927 can be used to sanction *pro se* plaintiffs such as Mr. Sullivant. *Simmons v. Methodist Hosps. of Dallas*, 632 F. App'x 784, 787 n.5 (5th Cir.

2015). A circuit split exists on the applicability of § 1927 to non-attorney *pro se* litigants. *Compare Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (§ 1927 inapplicable to *pro se* litigant) *with Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990) (§ 1927 applicable to *pro se* litigant). This split exists among district courts within the Fifth Circuit. *Compare Brown v. Dow Chem. Co.*, No. 3:13-CV-359-CWR-FKB, 2015 WL 5785571, at *2 (S.D. Miss. July 9, 2015) (finding § 1927 applicable to *pro se* non-attorney litigants) *with Phillips v. Austin Diagnostic Surgery Ctr.*, No. AU-17-CV-940-SS, 2018 WL 1128147, at *2 (W.D. Tex. Mar. 1, 2018) (finding § 1927 inapplicable to *pro se* non-attorney litigants).

As there is no binding case law on the matter, the Court will turn to the statute's language. 28 U.S.C. § 1927 expressly applies to "any attorney or other person admitted to conduct cases." A plain reading of the statute indicates that its scope includes both attorneys and non-attorneys conducting cases before a court. Additionally, while *pro se* litigants are not held to as high a standard as members of the bar, they "are not free to clutter the court's dockets with baseless suits." *Simmons*, 632 F. App'x at 787 (5th Cir. 2015). The Court recognizes a noticeable increase in the activity of *pro se* litigants, combined with multiple vexatious filings, calling for a need to treat them as advocates sanctionable under § 1927.

Sanctions applied pursuant to 28 U.S.C. § 1927, must be bottomed on "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *Clark v. Mortensen*, 93 Fed. Appx. 643, 650 (5th Cir. 2004). Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir.1991)). "The courts often use repeated filings despite warnings from the court, or other proof of excessive

litigiousness, to support imposing sanctions." *Id.* at 525-26 (citing *Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir.1988).

Mr. Sullivant requests this Court to interfere with ongoing state court proceedings through his RICO and § 1983 claims. He is attempting to relitigate already settled issues in an ongoing state case by framing the acts of the attorneys, judges, and court-appointed medical examiners as some criminal enterprise based solely on their actions in the state conservatorship proceedings. Mr. Sullivant's poorly veiled guise to overturn ongoing state proceedings through federal claims is an unnecessary multiplication of proceedings under § 1927. The Court finds that Mr. Sullivant's attempt to use this Court as an instrument to harass the Defendants into changing their decisions in the state court or to have this Court make changes in his favor demonstrates an improper motive sufficient to invoke sanctions pursuant to 28 U.S.C. § 1927.

"To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that every facet of the litigation was patently meritless." *Procter & Gamble Co.*, 280 F.3d at 526 (5th Cir. 2002). Mr. Sullivant was informed by multiple Mississippi courts that his attempts to overturn the Chancery Court's decisions were frivolous, not unlike what he requests this Court to do. *Sullivant v. Freeland*, 404 So. 3d 1281, 1283 (Miss. Ct. App. 2025); [51]. Mr. Sullivant's RICO and § 1983 claims are disguised attempts to obtain relief from the state court's orders. Mr. Sullivant was aware that his attempts to overturn the Chancery Court's decision were frivolous, making his entire federal suit against the Defendants patently meritless. The Court finds that Mr. Sullivant can be sanctioned under § 1927 for the entire cost of defense. The Court will allow the Defendants 10 days to file a calculation of their reasonable expenses and attorney's fees accrued in defending against Mr. Sullivant's claims in federal court.

The Court's application of § 1927 sanctions against Mr. Sullivant makes it unnecessary to address the applicability of sanctions under Rule 11 or 42 U.S.C. § 1988. Mr. Sullivant's motions to dismiss the counterclaims are denied and the Court retains jurisdiction over the counterclaims.

### D. Remaining Motions

In dismissing Mr. Sullivant's claims against the Defendants, the Court finds that his pending motions [3], [64], [66], and [81] are now moot. As a result, the four motions are denied.

## CONCLUSION

**ACCORDINGLY**, all the Defendants' Motions to Dismiss [15], [26], [30], [60], [62] are **GRANTED** for lack of subject matter jurisdiction. Mr. Sullivant's Motions to Dismiss [37], [38] are **DENIED.** All of Mr. Sullivant's claims are **DISMISSED WITHOUT PREJUDICE**. Four of Mr. Sullivant's remaining motions on the docket [3]; [64]; [66]; [81] are **DENIED as moot**.

**SO ORDERED** this 9th day of February, 2026.

    /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI